No. 15,551.

Northrup *v.* Nicklas.
(171 P. [2d] 417)

Decided July 1, 1946.

Mr. T. E. Munson, for plaintiff in error.

Mr. WILLIAM R. KELLY, Mr. E. TYNDALL SNYDER, for defendant in error.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

WILLIAM NICKLAS, defendant in error here, brought an action in the justice of the peace court alleging the unlawful detention of certain farming lands by William D. Northrup, plaintiff in error. Nicklas was successful in the justice of the peace court, whereupon Northrup appealed to the county court, where he suffered an adverse judgment, to review which he brought this action.

Reference will be made to the parties herein as plaintiff and defendant as they appeared in the justice of the peace court.

Plaintiff alleged that in the spring of 1943 the owners of a certain quarter section of land orally leased the same to him for the crop year 1944 on a crop share rental basis with the understanding that summer fallowing would be done in the summer of 1943. Plaintiff summer-fallowed about sixty acres of the quarter section to be planted in wheat in the spring of 1944. Subsequent to the oral lease mentioned, defendant purchased the quarter section subject to plaintiff's lease, and about April 15, 1944, entered the leased premises and planted the summer-fallowed ground without any right so to do and continued to hold possession thereof as against plaintiff, to the latter's damage, as alleged, in the sum of $300.00. Plaintiff further alleged the service of written notice and demand and defendant's failure to comply therewith. Judgment for possession and damages was sought.

In defendant's answer the oral lease and plaintiff's right of possession after March 1, 1944, was denied, and it was alleged that the lease to plaintiff was void under sections 6, 8 and 12 of the statute of frauds. Defendant

admitted that plaintiff had plowed sixty acres of the quarter section in the latter part of July, 1943, but denied that this acreage was summer-fallowed; alleged that defendant purchased the quarter section from the owners in the early part of July, 1943, and thereafter received a deed therefor, and further alleged that he had no notice of any claimed interest, leasehold or otherwise, of plaintiff. He further admitted that he entered the premises and about the 15th day of April, 1944, planted the sixty acres mentioned in plaintiff's complaint to barley; denied that plaintiff was in possession of the leased premises in question, and alleged his constructive possession; denied any damages and admitted the service of notice and demand for possession.

The evidence disclosed that the quarter section in question was owned by tenants in common, one of whom had leased this land to plaintiff on a crop share basis for at least six years immediately preceding the oral lease in question. Plaintiff had a crop share lease for the crop year of 1943, and in June the tenant in common, who had charge of the leasing of the quarter section, entered into an oral lease with plaintiff for the crop year 1944. In the latter part of July or the early part of August, 1943, plaintiff summer-fallowed about sixty acres. Defendant lived in the immediate vicinity of the land in question and knew of plaintiff's summer-fallowing, and in the fall of 1943 inquired of plaintiff's son to learn if plaintiff wanted to sell his summer-fallowing in the quarter section. Defendant received a deed for the land in question on August 14, 1943, and in the fall of 1943, subsequent to receiving the deed of the land in question, gave plaintiff permission to plant a fall crop on the summer-fallowed land. According to the testimony of the tenant in common, the lease orally given plaintiff was to run from March 1, 1944, to March 1, 1945. The evidence further disclosed that the fall of 1943 was so dry that plaintiff could not plant winter wheat, but about April 15, 1944, he went to the premises

to plant spring wheat. He found defendant in possession planting barley on the acreage which plaintiff had theretofore summer-fallowed. The evidence further disclosed that crops planted in this area in the fall of 1943 or spring of 1944 would mature in the latter part of July or the early part of August, 1944.

The action was tried in the county court without the intervention of a jury, and the trial judge rendered his "Findings and Judgment" in which he stated that the summer fallowing was done in early July, 1943; that defendant knew of plaintiff's operations on the leased premises, and about the middle of July, 1943, defendant entered into negotiations for the purchase of the quarter section and was told by one of the owners in common that the land was under lease to plaintiff. Defendant purchased the land in August, 1943, without making inquiry of plaintiff as to his possessory rights. The court further found that the quarter section was uninhabited, without buildings thereon, and that the fall of 1943 was so extremely dry that the land could not be planted to winter wheat; that defendant took possession thereof about April 15 and seeded the same, which fact was discovered when plaintiff moved his equipment and began preparation to plant spring wheat. The court further found that there was no evidence of violence.

With reference to the nature of the tenancy, the trial judge found: "The precise nature of plaintiff's tenancy is difficult to define. There is some evidence that it was a tenancy from year to year, but it is more likely that it was a tenancy for at least the crop year of 1944 although the exact beginning and ending of the term are not clear. It has been held that a lease for a term of one year to begin in the future is not within the statute. Sears vs. Smith, 3 Colorado, 287. In no event could this term have been for more than one year and could not have ended until time for harvesting crops for 1944."

The court further found that defendant was not an innocent purchaser, but had ample notice, according to

his own testimony, and that he was guilty of the unlawful detention of the property. It entered judgment in favor of plaintiff for the possession of the quarter section and for his costs.

While there are eight specifications of points, defendant presents them here under the following groups: 1. "The Complaint does not state a cause of action." 2. "Forcible entry and detention cannot be maintained against a party having a superior title." 3. "An action in forcible entry or forcible detention cannot be maintained where neither party is in actual possession of the land." 4. "The judgment of the Court is contrary to the facts found by the Court, is contrary to the admitted facts in the case, and is, therefore, not authorized by the law nor the evidence." We shall treat these specifications in the order set forth.

1. Defendant takes the position that the oral lease to plaintiff is absolutely void under sections 6, 8 and 12, chapter 71, '35 C.S.A. It is admitted that the oral lease was made in June, 1943, and that the crops planted on the land in question would not mature until the latter part of July or the early part of August, 1944. With these admissions defendant contends that the oral agreement in June, 1943, amounted to a lease for a period longer than one year and therefore it was void under these statutory sections. In support of this contention he relies strongly upon the decision in *School District No. 46, Sedgwick County v. Johnson,* 26 Colo. App. 433, 143 Pac. 264. We do not find that this case is in point for in that action a teacher sought to recover on a contract for personal services entered into with the school district in April for a term beginning in the following September and ending in May of the following year. Our Court of Appeals held that section 12, chapter 71, of the statute of frauds, was applicable, and, therefore, inasmuch as the agreement was by its terms not to be performed within one year from the making thereof, it was void and no recovery thereon could be had. It

212

should be noted that the School District-Johnson case was decided in September, 1914, and no reference therein was made to our opinion in *Sears v. Smith,* 3 Colo. 287, wherein it was specifically held that section 12 did not refer to the leasing of lands.

The law is definitely settled in Colorado by *Sears v. Smith, supra,* that the time between the making of the lease and the time when the lessee is entitled to possession thereunder cannot be counted in computing the year as that is no part of the term. It also is settled law in this jurisdiction that where, under the terms of an oral lease agreement possession is to be given at some fixed date in the future, the term of the lease begins at the time the lessee takes possession, and the date upon which the oral lease agreement was negotiated is not to be considered in determining whether it is void under the provisions of section 12, chapter 71, '35 C.S.A. Said section has no application under such circumstances. See, also, 37 C.J.S., p. 602, §1112; 111 A.L.R., p. 1465.

Defendant testified that plaintiff harvested some crops off of the land in question in 1943, and the tenant in common testified that plaintiff had a lease on the premises for the crop year 1943, so that if crops could not be harvested until the latter part of July or the early part of August, then, according to this testimony, in June, 1943, when the parties entered into the lease for the crop year 1944, plaintiff was in possession under his 1943 lease, and the agreement in June, 1943, was clearly a lease for a crop year to begin in futuro.

We find that the court correctly held that the oral lease to which plaintiff and the tenant in common having charge of the leasing of the land testified, was not violative of any provisions of the statute of frauds.

2. The trial court having found that defendant purchased the land in question with actual, as well as constructive, notice of plaintiff's leasehold rights therein, he was not an innocent purchaser. We having determined that the lease was not violative of any provision

of the statute of frauds, it gave plaintiff a superior right of possession for the crop year 1944 over the right of possession in the owner thereof until the expiration of the lease. Under this specification counsel for defendant directs our attention to *Rudolph v. Thompson,* 66 Colo. 98, 179 Pac. 151, which was a suit brought under the code provisions for possession and damages. This suit was one commonly denominated as an action in eject- ment, and any references therein to any of the pro- visions of chapter 70, '35 C.S.A., is obiter dicta.

■ Counsel also cites *Goad v. Heckler,* 19 Colo. App. 479, 76 Pac. 542, which is clearly an action in forcible entry and detainer, and nothing therein refers to an un- lawful detention action authorized under section 4, chapter 70, '35 C.S.A. If it be contended that force was necessary and must be established by plaintiff's compe- tent evidence, this is clearly a misinterpretation of the statute, where redress is sought under its provisions for relief from unlawful detention. Neither strong hand, nor a multitude of people, nor force in any sense, is necessary to complete a cause of action in unlawful detention.

■ 3. The statute provides that unlawful detention is a proper action, "When entry is made, without right or title, into any vacant or unoccupied lands or tene- ments." Subdivision first, section 4, chapter 70, '35 C.S.A.

4. There were few controverted facts before the court and there is ample evidence in the record to support the "Findings and Judgment" below.

Counsel for defendant safeguarded his client's rights by filing assignments of errors as well as specification of points, but docketed the cause here as one on appeal. Neither party to this action questioned this procedure.

■ We direct attention to the provisions of chapter 117, Session Laws of Colorado, 1941, abolishing appeals and providing that the only method by which the judg-

ment of an inferior tribunal can be reviewed in this court is by writ of error, and we have considered this action as if it had been thus presented.

The judgment is affirmed.